# UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

| | |
|---|---|
| WILLIAM LAWRENCE; VICTORIA LAWRENCE, | CASE NO. 26-3309 |
| | |
| PLAINTIFFS-APPELLANTS | NORTHERN DISTRICT OF OHIO CASE NO. 1:25-cv-01454 |
| | |
| V. | |
| | |
| NVR INC. | |
| | |
| DEFENDANT-APPELLEE. | |

## BRIEF OF APPELLANTS
## WILLIAM AND VICTORIA LAWRENCE

Michael R. Fortney
FORTNEY LAW, LLC
300 Weatherstone Dr. #303
Wadsworth, OH 44281
330.619.8502
mike@ohiolienlawyer.com

Attorney for Appellants


David Yeagley
Ryan W. Gillespie
UB GREENSFIELDER LLP
1660 West 2nd Street, Suite 1100
Cleveland, OH 44113
dyeagley@ubglaw.com
rgillespie@ubglaw.com

Attorneys for Appellees

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................. iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ..................................................... 0

STATEMENT IN SUPPORT OF ORAL ARGUMENT ..................................................... 0

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...................................... 0

1.    Ohio common law imposes an unwaivable duty on residential contractors to build in a workmanlike manner, and R.C. 2305.131 permits actions for latent defects for up to ten years after construction. The trial court dismissed Appellant's breach of contract and R.C. 4722 claims by enforcing a contractual one-year limitation period and a waiver of the discovery rule. Did the trial court err in enforcing these contractual limitation clauses to bar claims involving latent construction defects?...................................................................................................... 0

STATEMENT OF THE CASE............................................................................................ 1

SUMMARY OF THE ARGUMENT ................................................................................. 5

ARGUMENT.................................................................................................................... 6

FIRST ISSUE PRESENTED FOR REVIEW ................................................................. 6

I.    The one-year limitations clause is unreasonable and unconscionable................................... 7

II.    The "discovery rule" waiver clause is unreasonable and unconscionable............................ 13

III.    The one-year limitations clause and "discovery rule" waiver clauses both violate Ohio's public policy........................................................................................................................ 15

IV.    Appellee's inaction is another factor to review in determining whether the clauses in question are reasonable. ........................................................................................................ 18

V.    Appellants' warranty claims should survive........................................................................ 18

CONCLUSION................................................................................................................. 19

CERTIFICATE OF COMPLIANCE ................................................................................ 20

CERTIFICATE OF SERVICE .......................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Amos v. NVR, Inc*. 2022 WL 980676 (S.D. Ohio Mar. 31, 2022) .................... 10, 15

*Conte v. Blossom Homes, L.L.C*., 63 N.E.3d 1245, 1254 (Ohio App. 8th Dist. 2016) ....................................................................................... 8, 11, 12, 17

*Continental Leather Co. v. Liverpool*, *Brazil & River Plate Steam Navigation Co*., 259 N.Y. 621, 182 N.E. 207 (1932) ..................................................12

*Executive Plaza, LLC v. Peerless Ins. Co*., 22 N.Y.3d 511, 5 N.E.3d 989, 2014 NY Slip Op 898 (2014) ......................................................................12

*Jones v. Centex Homes*, 132 Ohio St.3d 1, 2012-Ohio-1001, 967 N.E.2d 11999, 16, 17

*Kraly v. Vannewkirk*, 69 Ohio St.3d 627 (1994) .......................................8

*Litsinger v. Forest River, Inc.*, 536 F. Supp. 3d 334 (N.D.Ind.2021)......................12

*Miller v. Progressive Cas. Ins. Co.*, 69 Ohio St.3d 619, 635 N.E.2d 317 (1994) .....8

*Mitchem v. Johnson*, 7 Ohio St.2d 66, 218 N.E.2d 594 (1966)..............................17

*MRI Software LLC v. Univ. of Minnesota Found. - Dinnaken Hous., LLC*, 2024 WL 3052071 (N.D. Ohio June 18, 2024) ........................................................8

Rule 11 ...............................................................................................13

*Tadych v. Noble Ridge Constr., Inc.*, 200 Wash.2d 635, 519 P.3d 199 (2022)9, 10, 11, 15, 16

*United Commercial Travelers v. Wolfe* (1947), 331 U.S. 586, 67 S.Ct. 1355, 91 L.Ed. 1687 ..............................................................................................8

**Other Authorities**

Appellants' Complaint.................................................................... passim

**Statutes**

R.C. 2305.131(A)(1) ...................................................................... 1, 7, 10

R.C. 2323.51 ....................................................................................13

R.C. 4722 ................................................................................ passim

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellants believe that a case such as this is suitable for oral argument, because this case would essentially be making new law across Ohio, or at the very least overturning cases from the Northern and Southern Districts of Ohio. As such, Appellants believe that oral argument will be helpful in making their argument to the Court.

## STATEMENT IN SUPPORT OF JURISDICTION

The initial district court jurisdiction stems from diversity jurisdiction, as the amount in controversy exceeds $75,000, and the parties are diverse. Appellee was the initial party who transferred this case from the Lorain County Court of Common Pleas to the Northern District of Ohio. R. 1. Appellants took this appeal of right by way of FRAP 4(a)(1)(A) by filing a notice of appeal with the Northern District of Ohio clerk. R. 17. The district court Order was issued on March 13, 2026, and Appellants timely appealed on April 10, 2026. R. 15, 16, 17.

This appeal is from a final order or judgment disposing of all of Appellants' claims.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. **Ohio common law imposes an unwaivable duty on residential contractors to build in a workmanlike manner, and R.C. 2305.131 permits actions for latent defects for up to ten years after construction. The trial court dismissed Appellant's breach of contract and R.C. 4722 claims by enforcing a contractual one-year limitation period and a waiver of the discovery rule. Did the trial court err in enforcing these contractual limitation clauses to bar claims involving latent construction defects?**

0

## STATEMENT OF THE CASE

Appellants filed a Complaint (the "Complaint") against Defendant NVR, Inc. ("Appellee") on June 23, 2025 in the Lorain County, Ohio, Court of Common Pleas. Complaint, R. 1-1 at PageID # 8. The Complaint alleged two claims against Appellee, one for breach of contract, and one for violations of Ohio's Home Construction Service Suppliers Act, R.C. 4722. *Id.* at PageID # 13-14.

The Complaint contained the following relevant facts, largely taken from the district court's statement of facts. On June 2, 2021, Appellants/Plaintiffs William and Victoria Lawrence ("Appellants" or "Plaintiffs") entered into a contract (the "Contract") with Appellee/Defendant NVR, Inc.  ("Appellee" or "Defendant" or "NVR"). R. 1-1 at ¶ 6. The Contract provided that Plaintiffs would purchase a lot, and Defendant would build a home on that lot at 9072 Nash Lane (the "Project"). *Id.* at ¶ 8. Paragraph 14 of the Contract provides that:

> **[Appellants] and [Appellee] agree that any and all claims arising out of or relating to this Agreement, Settlement hereunder, or improvements to the Property, regardless of legal theory, except any claims under the Limited Warranty ("Claims"), shall be subject to a one (1) year limitation of action period and bar date. Such claims based on matters occurring before the Settlement Date shall be deemed to have arisen and accrued, if at all, and the one year limitation of action period for all such claims shall begin to run on the Actual Settlement Date. All application of the so-called "discovery rule" is mutually waived by the parties. By executing this Agreement, [Appellants] acknowledge [their] understanding and agreement to these terms and that the said one (1) year period is completely reasonable in all respects. Notwithstanding the foregoing, these bar date terms shall not**

1

> **apply to claims for indemnity and/or contribution by [Appellee] against [Appellants] and/or any other person. These rights may only be enforced by [Appellants] and [Appellee] and nothing herein shall be construed to create any third party beneficiary rights in any other person or entity.**

R. 1-1 at PageID # 20 (Bold print as in the original). "The Project was completed in or around November 2021, and Plaintiffs moved into their new home shortly afterward." *Id*. at PageID # 9, ¶ 10.

In 2022, "Plaintiffs began to notice water related issues with their home." *Id*. at ¶ 11. "Specifically, Plaintiffs noticed that an abnormal amount of water seemed to be entering the home and causing the sump pump to work at an excessive rate." *Id*. at ¶ 12. "Plaintiffs also began noticing smells that seemed to appear any time it rained in the vicinity of their home." *Id*. at ¶ 13. In the spring and summer of 2022, Plaintiffs/Appellants informed Defendant/Appellee of these issues. *Id*. at PageID #10, ¶ 14. Defendant "did not inspect the Project in any reasonable manner in 2022 after being informed of the potential water issues with the Project." *Id*. at ¶ 15. Instead, Defendant informed the developer of the Project which determined that a storm sewer lateral near the front yard of the Project could be the source of the excessive water. *Id*. at ¶¶ 16-17. In 2023, the developer repaired the storm sewer lateral, but "that did not solve the problems with water related to the Project." *Id*. at ¶¶ 18-19. Indeed, "[a]fter the storm lateral repair was completed, the smells after rain continued, and the Project continued to suffer from excessive water that caused

Plaintiffs' sump pump to remove water at a high rate." *Id*. at ¶ 20. "Plaintiffs continued to notify Defendant of the ongoing problems related to the Project." *Id*. at ¶ 21.

"[I]n December 2024, approximately three years after the Project was completed, Plaintiffs' basement flooded." *Id*. at ¶ 22. "Plaintiffs immediately informed Defendant." *Id*. at ¶ 23. Defendant "informed the City of North Ridgeville ["the City"], and the City came to check the Project in order to determine whether they could be at fault." *Id*. at ¶ 24. "First, the City checked the storm lateral, which was fine." *Id*. at ¶ 25. "Then the City checked to see if the water inside Plaintiffs' home was chlorinated, which would indicate that it was City water entering the project, but the water was not chlorinated." *Id*. at PageID #11, ¶ 26. "The lack of chlorination meant that the water was storm water of some sort." *Id*. at ¶ 27. Defendant "was made aware that storm water flooded the Project" but "did nothing to fix the flooding or water intrusion problems with the Project." *Id*. at ¶ 28-29.

Defendant "also did nothing to inspect the Property or determine a source of the flooding." *Id*. at ¶ 30. "On or around January 3, 2025, less than a week after Plaintiffs' basement flooded, Plaintiffs informed NVR that they believed the retention ponds at the rear of the Project were causing the flooding." *Id*. at ¶ 31. "NVR did not do any of its own investigation" but "punted investigation responsibilities to another, this time Paul Haney, from the management company for

3

Plaintiffs' HOA." *Id*. at ¶ 33. Mr. Haney told NVR and the City that he had "inspected the ponds and found no issues." *Id*. at ¶ 34.

Plaintiffs "sought additional opinions" and "reviewed their own pictures from construction and noticed an image showing an underground drain that was cut through and damaged by NVR (or its subcontractor) during excavation for the Project." *Id*. at ¶ 36. "Plaintiffs informed Defendant of this situation on February 20, 2025, so that NVR could inspect the issue." *Id*. at ¶ 37. However, "NVR never responded to that email and never sent anyone out to investigate the issue." *Id*. at ¶ 38.)

"Instead, Plaintiffs had to hire American Earth Companies ("American Earth") to fully determine the cause of the excess water entering Plaintiffs' home." *Id*. at PageID #12, ¶ 39. On March 28, 2025, American Earth performed an inspection of the Project and "found the drain in question that was cut by NVR during construction, and [] determined that this drain came from the pond, the drain was wet (meaning it was active), and the drain was the source of the additional water entering Plaintiffs' home." *Id*. at ¶ 42. American Earth also found that "NVR (or its subcontractor) was aware of the damaged drain because they attempted to cover the broken drain with stone, but they did not properly seal the drain." *Id*. at ¶ 43. After excavating and determining the issue, American Earth capped the drain at issue, and attempted to close the drain at its source. *Id*. at ¶ 44. "Both of the fixes mentioned

4

[above] appear to have worked, because Plaintiffs have not suffered any additional water intrusion issues since American Earth performed the fix." *Id*. at ¶ 45.

On July 11, 2025, Appellee filed a notice of removal to federal court. Notice of Removal, R. 1. On August 18, 2025, Appellee filed its Motion to Dismiss (R. 6) and Brief in Support of Motion to Dismiss (R. 6-1). Appellants filed their Response in Opposition to the Motion to Dismiss on September 17, 2025. R. 8. Appellee filed its Reply on October 1, 2025. R. 9.

Subsequently, the trial court requested additional briefing on the public policy argument. R. 12. Appellants submitted their supplemental briefing on February 12, 2026 (R. 13) and Appellee submitted its supplemental briefing on February 19, 2026 (R. 14).

The trial court issued its Memorandum and Order on March 13, 2026 and granted Appellee's Motion to Dismiss (R. 6) in its entirety. R. 15. It is this Order that Appellants now timely appeal.

**SUMMARY OF THE ARGUMENT**

Ohio common law imposes a duty on residential contractors, such as Appellee, to construct homes in a workmanlike manner. Ohio common law also states that since this is a duty, it cannot be waived. Appellee drafted a "limitations" clause, as well as a discovery rule waiver clause, that together purport to merely limit the timeframe to bring a claim for failure to build in a workmanlike manner, as

5

opposed to waiving the duty altogether. The trial court held that these clauses were acceptable and reasonable limitations, which act to limit Appellants' ability to bring not only breach of contract claims, but also claims for violations of Ohio's Home Construction Service Suppliers Act, R.C. 4722. The question for this Court is whether the limitations clause and discovery rule waiver are unreasonable or against Ohio public policy when the effect of those clauses is to waive the duty to build in a workmanlike manner and waive Appellants' ability to file claims for latent defects.

## ARGUMENT

## FIRST ISSUE PRESENTED FOR REVIEW

**Ohio common law imposes an unwaivable duty on residential contractors to build in a workmanlike manner, and R.C. 2305.131 permits actions for latent defects for up to ten years after construction. The trial court dismissed Appellant's breach of contract and R.C. 4722 claims by enforcing a contractual one-year limitation period and a waiver of the discovery rule. Did the trial court err in enforcing these contractual limitation clauses to bar claims involving latent construction defects?  trial court erred when it dismissed Appellants' claims.**

The trial court, through its March 13, 2026 Order, found that the one-year limitations clause and the clause waiving application of the "discovery rule" were both reasonable under Ohio law and not void as being against public policy. Appellants ask this Court to review and reverse the trial court's order, given that the clauses are both unreasonable and against well-defined public policy of Ohio.

6

**I.      The one-year limitations clause is unreasonable and unconscionable.**

"Generally, in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, as between the parties, the time for bringing an action on such contract to a period less than that prescribed in a general statute of limitations provided that the shorter period shall be a reasonable one." *Kraly v. Vannewkirk*, 69 Ohio St.3d 627 (1994), citing *United Commercial Travelers v. Wolfe* (1947), 331 U.S. 586, 608, 67 S.Ct. 1355, 91 L.Ed. 1687. "However, such a contractual limitations period is valid only if the time provision [1] is unambiguous, [2] is for a reasonable period, and [3] is not in violation of public policy." *Conte v. Blossom Homes, L.L.C.*, 63 N.E.3d 1245, 1254 (Ohio App. 8th Dist. 2016); see also *MRI Software LLC v. Univ. of Minnesota Found. - Dinnaken Hous., LLC*, 2024 WL 3052071, at *6 (N.D. Ohio June 18, 2024) (Calabrese, J.); *Miller v. Progressive Cas. Ins. Co.*, 69 Ohio St.3d 619, 624 635 N.E.2d 317 (1994); *Kraly* at 632.

The one-year limitation of claim and discovery rule waiver clauses contained in the Contract are both unreasonable and in violation of Ohio public policy. While it is true that the Ohio Supreme Court and Ohio courts have found that contractual limitations period are reasonable in certain circumstances, it is also true that Ohio courts have not fully wrestled with the issue of whether a limitation clause such as this one, contained in a contract for the construction of a new home, a situation that brings forward application of R.C. 4722, is reasonable when the clause in question

7

limits Appellants' rights, limits application of R.C. 4722, and goes against other public policy of the State of Ohio laid out in *Jones v. Centex Homes*, 132 Ohio St.3d 1, 2012-Ohio-1001, 967 N.E.2d 1199.

Recently, the State of Washington had the occasion to review a similar contractual provision. *Tadych v. Noble Ridge Constr., Inc.*, 200 Wash.2d 635, 519 P.3d 199 (2022). The contract provision in *Tadych* stated "[a]ny claim or cause of action arising under this Agreement, including under this warranty, must be filed in a court of competent jurisdiction within one year (or any longer period stated in any written warranty provided by the Contractor) from the date of Owner's first occupancy of the Project or the date of completion as defined above, whichever comes first." *Id.* at 641, ¶ 7.

The facts of *Tadych* are quite similar to this case. In *Tadych*, like in this case, the homeowner noticed the relevant issues prior to expiration of the one-year period. *Id.* at 639 ("within the one-year contract limitation period, the Tadychs met with the contractor and the construction expert to discuss" the issues, and "[t]he contractor again assured the Tadychs "there were no issues about which [they] ought to be concerned"). Also like this case, the Tadychs noticed additional issues in subsequent years and continued to notify the contractor. *Id.* Also like this case, eventually the contractor in question simply stopped responding. *Id.* Eventually, like this case, the Tadychs were forced to file suit, and the contractor Noble Ridge (like

the contractor Appellee/NVR in this case) filed a motion to dismiss, citing the limitations clause in the contract. *Id.*

In finding that the *Tadych* one-year limitations clause was unreasonable and unconscionable, the Washington Supreme Court analyzed the claim as it related to the applicable statute of limitations, the Washington statute of repose, RCW 4.16.310. In the present case, the trial court determined that "the HCSSA, R.C. 4722.01 et seq., does not contain a statute of limitations." Order, R. 15, PageID # 192, citing *Amos v. NVR, Inc*. 2022 WL 980676 at *4 (S.D. Ohio Mar. 31, 2022). This is not an accurate statement though, as latent defects, such as the defects at issue in this case and in R.C. 4722, are (like the Tadych claims) subject to Ohio's statute of repose, R.C. 2305.131(A)(1), which limits the time to bring claims for latent defects (i.e. violations of the duty to build in a workmanlike manner) to 10 years. Nonetheless, the trial court in the present case found that even if the statute of limitations is 10 years, "the parties were still permitted to shorten the statute of limitations through contract." *Id.*

In contrast, the *Tadych* court found that "[t]he one-year limitation provision provides a substantially shorter limitations period than plaintiffs are otherwise entitled" under the Washington statute of repose, RCW 4.16.310, which provides a six year limitations period, and "benefits the contractor at the expense of the rights of the homeowner." *Tadych* at 643, ¶ 14. The *Tadych* court noted that the statute of

9

repose "establishes a substantive balance in construction situations by requiring that a homeowner discover and bring a defective construction claim within the [] statutory period or lose the right to any remedy based on faulty construction. The statute benefits the contractor by establishing time certainty by ending potential liability after six years regardless of when discovery or any defect occurs." *Id.* at 644, ¶ 15. The *Tadych* court went on to state that "the one-year contractual limitation, particularly in light of the statutory policy, unduly benefits the contractor at the expense of the homeowner's right to bring a legitimate claim. In comparison to the otherwise existing [] statute of limitations, the contract's provision is one sided in favor of the contractor with no benefit to the homeowner." *Id.* The *Tadych* court ultimately found that the provision in question was unconscionable, given the fact that it was not separately negotiated, that the Plaintiffs were lay persons, and that the provision unduly benefitted the contractor at the expense of the Plaintiffs. Each of those same elements apply to the present case, where Plaintiffs were lay persons, the provision in question was not separately negotiated, and the provision unduly benefits Appellee at the expense of Appellants. If clauses similar to the one at issue in this case have been deemed unconscionable then surely those clauses are also unreasonable, which is a lesser standard.

The closest Ohio case to touch on the issue of a limitations clause in a contract for the construction of a new home is *Conte v. Blossom Homes, supra*. *Conte* largely

dealt with the enforceability of an arbitration provision, so the limitations period analysis is limited, but the *Conte* court still had a brief time to wrestle with a similar contractual limitations period. In its review, the *Conte* court presciently noted that the majority of contractual limitations period cases in Ohio deal with insurance agreements, rather than residential construction agreements, and "[w]hat is reasonable in the context of an automobile insurance policy may not be reasonable in a construction case, where defects may be latent." *Conte*, supra at ¶ 39.

The *Conte* court then cited a New York case, which included the statement that "[a] 'limitation period' that expires before suit can be brought is not really a limitation period at all, but simply a nullification of the claim." *Conte*, ¶ 40, citing *Executive Plaza, LLC v. Peerless Ins. Co.*, 22 N.Y.3d 511, 5 N.E.3d 989, ¶ 4, 2014 NY Slip Op 898 (2014), citing *Continental Leather Co. v. Liverpool, Brazil & River Plate Steam Navigation Co.*, 259 N.Y. 621, 622-623, 182 N.E. 207 (1932). As stated by another court examining the *Conte* and *Executive Plaza* cases, "[a] contract can reasonably reduce the time period to file a claim; it cannot eliminate it." *Litsinger v. Forest River, Inc.*, 536 F. Supp. 3d 334, 349 (N.D.Ind.2021).

The limitation period contained in the contract in the present case seeks to eliminate claims. The trial court brushes off these arguments quickly, stating that Appellants "had photographs of the construction … which showed that the underground drainage pipe had been cut through and damaged during the

11

excavation," and thus Appellants "had sufficient information before them to bring a claim against Defendant during that one-year limitations period." R. 15 at PageID # 195. The trial court places an unreasonable and untenable situation before Appellants, and it is unclear what Appellants could have done differently.

Yes, Appellants could have brought a claim, but Appellants did not have the information required, namely the causation or damage elements, to assure them that they would not be in violation of Rule 11 of the Ohio Rules of Civil Procedure or R.C. 2323.51 (Ohio's frivolous conduct in filing civil claims statute). Further, Appellants did not know in 2022 of any violations of R.C. 4722, so they could not have brought that claim at that time either, and amending the complaint, according to the trial court, would have been a futile effort, because the new R.C. 4722 claim would be subject to the limitations clause. Essentially, the trial court posits that the clause is reasonable because Appellants could have (and maybe should have) risked Rule 11 and R.C. 2323.51 sanctions in order to preserve their claims without knowing all of the information required to make a claim. This is an unreasonable position to put Appellants in.

As the Complaint alleges, "the first flood occurred in December of 2024, approximately three years after the Project was completed." R. 1-1, PageID # 10, ¶ 22. It is true that Appellants had an overactive sump pump, but Appellants did not know, in 2022, that the overactive sump pump would eventually lead to a flood. And

12

it wasn't until after the flood, *in 2024*, that Appellants had a reason to review construction photos and hire a third-party to determine, finally, the latent defect at issue in this case. The latent defect remained hidden until that time even though Appellee "was made aware that storm water flooded the Project" because Appellee "did nothing to fix the flooding or water intrusion problems with the Project, and "nothing to inspect the Project or determine a source of flooding." *Id.* at PageID #11, ¶¶ 28-30.

It is now abundantly clear, with hindsight, that Appellee's lack of response was based on the limitations and discovery rule waiver clauses contained in the Contract. Appellee believed its obligations to Appellants to be exhausted, since Appellants hadn't brought their claim timely. It is obvious to anyone who learns of this claim that Appellee's actions are revolting, and it is also clear that any clauses that permit these actions are unreasonable.

## II.   The "discovery rule" waiver clause is unreasonable and unconscionable.

The same arguments made above also apply to the clause purporting to waive application of the so-called "discovery rule". First off, this clause is arguably void on its face as it does not define what the so-called "discovery rule" actually is, and Appellants are lay persons who cannot be expected to understand the terminology. Even attorneys likely do not understand precisely what this sentence means, as it is vague.

13

Additionally, if this clause is deemed to make sense, this clause unreasonably benefits Appellee at the expense of Appellant, making it unconscionable and unreasonable like the time-limitations clause.

Ohio's Home Construction Service Suppliers Act makes it a violation of the act for a home construction service supplier such as Appellee to, "after entering into a contract with an owner … fail to perform the home construction service in a workmanlike manner." R.C. 4722.03(A)(3)(d).

The HCSSA goes on to state that it is a violation of the act to "[m]ake the performance of any home construction service contingent upon an owner's waiver of any rights this chapter provides." R.C. 4722.03(A)(4). This is exactly what the contractual limitations clause relied on by NVR seeks to do. The clauses in question are each contained in a form contract, and they were not separately negotiated. As such, it is clear that in order to sign the contract to purchase the home, Appellants were required to sign this Contract and agree to its terms. Appellants made this argument to the trial court, but the trial court rejected it, relying on the *Amos* decision. R. 15, PageID# 203. But again, as described above in the arguments related to *Tadych*, the Contract was drafted by Appellee, not Appellants, and it is unreasonable to require that Appellants negotiate each and every term of a contract before a court will determine that R.C. 4722 applies.

14

Further, the discovery rule clause contained in the Contract is much more explicit than the limitations clause, and the discovery rule clause states that the discovery rule is *waived*. Waiving the discovery rule, in this context, means waiving R.C. 4722. The chain is that the discovery rule is waived, which means that R.C. 4722 claims are waived if they appear anytime after one year all the way up to the ten-year statute of repose window. As the *Tadych* court discussed, the discovery rule waiver unreasonably benefits Appellee at the expense of Appellants, so it is also unreasonable and unconscionable.

**III.    The one-year limitations clause and "discovery rule" waiver clauses both violate Ohio's public policy.**

Ohio common law (i.e. Ohio public policy) imposes an implied duty to contractors such as Appellee to perform construction in a workmanlike manner. *Jones, supra*.

A duty is imposed by law upon a builder-vendor of a real-property structure to construct the same in a workmanlike manner and to employ such care and skill in the choice of materials and work as will be commensurate with the gravity of the risk involved in protecting the structure against faults and hazards, including those inherent in its site. If the violation of that duty proximately causes a defect hidden from revelation by an inspection

15

reasonably available to the vendee, the vendor is answerable to the vendee for the resulting damages.

*Id*. at ¶ 6, citing *Mitchem v. Johnson*, 7 Ohio St.2d 66, 218 N.E.2d 594 (1966).

The *Jones* court went on to state that:

[T]he duty to construct a house in a workmanlike manner using ordinary care is the baseline standard that Ohio home buyers can expect builders to meet. The duty does not require builders to be perfect, but it does establish a standard of care below which builders may not fall without being subject to liability, even if a contract with the home buyer purports to relieve the builder of that duty. Accordingly, we conclude that a home builder's duty to construct a house in a workmanlike manner using ordinary care is a duty imposed by law, and a home buyer's right to enforce that duty cannot be waived.

*Id*. at ¶ 14.

The trial court spent significant time analyzing the public policy of Ohio before ultimately ruling that Ohio's freedom to contract public policy was more important than any other public policy of Ohio, even the policy laid out squarely in *Jones*. As the *Conte* court stated, "[a] 'limitation period' that expires before suit can be brought is not really a limitation period at all, but simply a nullification of the claim." *Conte*, ¶ 40. Here the limitation period in question seeks to nullify claims arising from the duty to build in a workmanlike manner. The Ohio Supreme Court

16

has held that this duty cannot be waived. The statute of repose allows claims for violations of the duty to build in a workmanlike manner up to ten years after construction, so both the one-year limitations period and the discovery rule clauses are against public policy.

These clauses are also against the HCSSA, R.C. 4722. The HCSSA allows homeowners such as Appellants to bring claims, pursuant to the act, for, among other things, failures to build in a workmanlike manner. Here, Appellants did not discover the failure until after the flood, which itself was well after the limitations period expired and the discovery rule was deemed waived. Under the trial court's reasoning, limiting the application of a statute such as this is as simple as adding a limitations clause to a contract. Presumably even if Appellee had explicitly stated that all portions of the HCSSA were waived, if Appellants could not prove that they attempted to *negotiate* that term out of the contract, the trial court would have ruled that Appellants did not actually waive any rights, but instead agreed to remove them. Appellants hope that this Court is able to see the clauses in question for what they are, transparent attempts by Appellee to remove Ohio public policy protections afforded to consumers like Appellants.

17

**IV.    Appellee's inaction is another factor to review in determining whether the clauses in question are reasonable.**

The allegations in the Complaint paint a picture of inactivity and failure to address concerns related to workmanship on the Project. Appellants notified Appellee of issues in 2022, within the one-year time limit, but Appellee "did not inspect the Project in any reasonable manner in 2022 after being informed of the potential water issues with the Project." R. 1-1, PageID # 10. The same thing happened throughout the Project, a notification of an issue, followed by inaction.

If this case is allowed to stand, this case will serve as a green light to all home builders, across Ohio and the other states within the Sixth Circuit, if not across the country, that the best way to handle customers and bothersome consumer protection statutes is to insert a one-year limitation clause and a waiver of discovery rule clause into the contract, and then simply do nothing when presented with potential claims, in an effort to hold out until the 366th day, at which point the contractor can just stop responding to emails altogether.

This is essentially exactly what happened in this case, and this is a very slippery slope, should Appellee be deemed to have acted reasonably.

**V.    Appellants' warranty claims should survive.**

Appellants' breach of contract claim is also a breach of warranty (part of the Contract) claim. The warranty claim should obviously survive this action, as

18

dismissing it would create an unfair, *res judicata*, situation where Appellants could be forbidden from taking any further action against Appellee, in the event the Court does not wish to reverse the trial court.

However, this Court should not use the warranty claim to support the idea that Appellants are still able to pursue a claim and thus not be damaged. The warranty claim alone is insufficient, because any warranty claim would arise out of a failure to build in a workmanlike manner, and a failure to build in a workmanlike manner is a violation of R.C. 4722, so Appellants should be permitted to bring that claim as well, as explained above.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that this Court reverse the March 13, 2026 order from the trial court, and remand the case to the trial court for further proceedings.

Respectfully submitted,

*/s/Michael R. Fortney*
Michael R. Fortney (#0092325)
FORTNEY LAW, LLC
300 Weatherstone Dr. #303
Wadsworth, OH 44281
(330) 619-8502
mike@ohiolienlawyer.com
Attorney for Appellants

19

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this document complies with the FRAP(a)(7)(B) type-volume limitation and includes 5,507 words.

/s/Michael R. Fortney
Michael R. Fortney (#0092325)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 15, 2026 a copy of the foregoing Brief of Appellants was sent by email to counsel for Appellee.

/s/Michael R. Fortney
Michael R. Fortney (#0092325)

20

**DESIGNATION OF DOCUMENTS**

- Complaint; R. 1-1.
- Notice of Removal; R. 1
- Appellee Motion to Dismiss; R. 6
- Appellee Brief in Support of Motion to Dismiss; R. 6-1
- Appellants' Response Brief in Opposition to Motion to Dismiss; R. 8
- Appellee Reply in Support of Motion to Dismiss, R. 9
- Trial Court Opinion and Order; R. 15
- Appellants' Notice of Appeal; R. 17